

FILED

OCT 12 2011

BY DAVID ANDREWS, CLERK
Deputy

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI

BROOKE RUTLEDGE,
Individually and on Behalf of All
Others Similarly Situated,

                    Plaintiffs,

v.

FACEBOOK, INC

Serve at:
1601 S. California Ave.
Palo Alto, CA 94304

DOES 1 THROUGH 10,

Defendants.

Case No: 3:11CV133-B-A

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff, on behalf of herself and all others similarly situated, alleges as follows:

### INTRODUCTION

1. This class action arises out of improper and unlawful actions by Defendants who participated in a scheme to intercept, endeavor to intercept, or procure Plaintiff and the Class members' personal information as prohibited by law.

2. Plaintiff and the Class members are individuals who subscribe to the online social media site Facebook.

3. Facebook maintains personal information pertaining to each individual subscriber as well as monitors the individual online habits of its users, thereby keeping track of websites they visit.

4.    Upon obtaining personal information and/or wire or electronic communications of
      Plaintiff, Facebook conspired to use said information for target marketing which
      pertained to Plaintiff and the individual Class members, over the Internet.

5.    Such conduct was committed in violation of Title III of the Omnibus Crime Control and
      Safe Streets Act of 1968 as amended by the Electronic Communication Privacy Act of
      1986, 18 U.S.C. § 2511, *et seq.* (the "Wiretap Act"), and by the specific terms of the
      Facebook subscription.

## PARTIES

### Plaintiff

6.    Plaintiff Brooke Rutledge is an individual who resides in Lafayette County, Mississippi.
      Upon information and belief, Defendants intercepted, collected, and stored personal
      information from Plaintiff.

### Defendants

7.    Defendant Facebook, Inc. ("Facebook") is a company organized and existing under the
      laws of Delaware with its principal place of business at 1601 S. California Ave., Palo
      Alto, California 94304. Upon information and belief, Facebook owns and/or operates
      websites, including www.facebook.com, which offer online social interaction and picture
      storage. Facebook, Inc. is not registered with the Mississippi Secretary of State to do
      business in Mississippi.

8.    Defendants Does 1 through 10 are the remaining directors, employees, agents, or
      contractors of Facebook that are yet to be named and whose identity will become known
      through discovery and/or by requests made by Plaintiff or the members of the plaintiff
      class, after which such remaining defendants will be added as individual defendants.

## JURISDICTION AND VENUE

9.  This Court has jurisdiction over this action and all Defendants pursuant to 28 U.S.C.

    §1331 in that this action arises under statutes of the United States, specifically violations

    of the "Wiretap Act."

10. Additionally, this Court has personal jurisdiction over Defendant Facebook pursuant to

    Mississippi's long-arm statute, § 13-3-57, since Facebook transacted business and made

    contracts in Mississippi directly through the website www.facebook.com, violated the

    law within the state of Mississippi, and otherwise has sufficient minimum contacts with

    the state of Mississippi as more particularly described below.

11. Defendant Facebook has sufficient minimum contacts such that the maintenance of this

    suit does not offend traditional notions of fair play and substantial justice. Facebook has

    voluntarily submitted itself to the jurisdiction of this Court and jurisdiction is proper

    because, among other things:

    a.  Facebook directly and purposefully obtained, misappropriated, and used personal

        information and/or information relating to wire or electronic communications of

        individuals living in Mississippi, including Plaintiff and the individual Class

        members;

    b.  Facebook committed tortious acts within Mississippi by misappropriating personal

        information and/or wire or electronic communications of citizens of Mississippi and

        otherwise violating the Wiretap Act;

    c.  Plaintiff's and the Class members' causes of action directly arise from

        Facebook's commission of tortious and unlawful acts in Mississippi;

    d.  Plaintiff's and the Class members' causes of action directly arise from

Facebook's transaction of business in Mississippi;

    e.    Facebook should reasonably anticipate being haled into court in Mississippi to answer for its unlawful acts. Mississippi has a strong interest in providing a forum for its residents aggrieved by violations of the law.

12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(c) because Plaintiff resides in the Northern District of Mississippi, where a substantial part of the events giving rise to the claims at issue arose.

### GENERAL ALLEGATIONS

13.    Defendant Facebook operates a website, www.facebook.com, which is primarily a social networking site.

14.    In conducting its business, Facebook aggregates data on individual members of the public and uses that information in furtherance of marketing and advertising.

15.    Facebook tracks, collects, and stores wire or electronic communications of its users, including but not limited to users' Internet browsing history.

16.    Leading up to September 23, 2011, Facebook tracked, collected, and stored its users' wire or electronic communications, including but not limited to portions of their Internet browsing history even when the users were not logged-in to Facebook.

17.    Plaintiff did not give consent or otherwise authorize Facebook to intercept, track, collect, and store her wire or electronic communications, including but not limited to her Internet browsing history when not logged-in to Facebook.

18.    The electronic information procured by Facebook while Plaintiff was not logged-in to Facebook contained personal information and/or wire or electronic communications of Plaintiff.

19.     At all times material, Defendants knew, or reasonably should have known, that their

        actions violated clearly established statutory rights of Plaintiff and the Class members.

### CLASS ACTION ALLEGATIONS

20.     This action is properly brought as a plaintiff class action pursuant to FED. R. CIV. P.

        23(b)(3).  Plaintiff brings this action on her own behalf and all others similarly situated,

        as representative of the following class and subclass:

> All individuals in the State of Mississippi who subscribe to Facebook and
> whose electronic internet information was intercepted by Facebook when
> the individuals were not logged-in to Facebook.

        Excluded from the Class are any individual who opts out of the class.

21.     The particular members of the Class are capable of being described without difficult

        managerial or administrative problems.  The members of the Class are readily identifiable

        from the information and records in the possession or control of Facebook.

22.     The Class members are so numerous that individual joinder of all members is impractical.

        This allegation is based upon information and belief that Defendants intercepted the

        personal information of millions of Facebook users, of which there are more than 150

        million in the United States.

23.     There are questions of law and fact common to the Class, which questions predominate

        over any questions affecting only individual members of the Class, and, in fact, the

        wrongs suffered and remedies sought by Plaintiff and the other members of the Class are

        premised upon an unlawful scheme participated in by all Defendants.  The principal

        common issues include, but are certainly not limited to the following:

        a.      The nature and extent of Defendant's participation in intercepting the wire and/or

                electronic communications of class members;

b. Whether or not the interception of wire and/or electronic communications was intentional;

c. Whether or not Defendants should be enjoined from intercepting any wire and/or electronic communications without the consent of its users;

d. Whether the actions taken by Defendants in intercepting the wire and/or electronic communications of class members violate the Wiretap Act;

e. The nature and extent to which the wire and/or electronic communications of Class members was unlawfully intercepted, tracked, stored, or used;

f. The nature and extent of the Class members' actual damages;

g. The nature and extent of all statutory penalties or damages for which Defendants is liable to the Class members; and

h. Whether punitive damages are appropriate.

24. Plaintiff's claims are typical of those of the Class and are based on the same legal and factual theories.

25. Plaintiff will fairly and adequately represent and protect the interests of the Class. She has suffered injury in her own capacity from the practices complained of and is ready, willing, and able to serve as class representative. Moreover, Plaintiff's counsel is experienced in handling class actions and actions involving unlawful commercial practices. Neither Plaintiff nor her counsel has any interest that might cause them not to vigorously pursue this action.

26. Certification of a plaintiff class under FED. R. CIV. P. 23(b)(3) is appropriate in that Plaintiff and the Class members seek monetary damages, common questions predominate over any individual questions, and a plaintiff class action is superior for the fair and efficient adjudication of this controversy. A plaintiff class action will cause an orderly and expeditious administration of the Class members' claims and economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured. Moreover, the individual class members are unlikely to be aware of their rights and not in a position (either through experience or financially) to commence individual litigation against the likes of Defendants.

27. Alternatively, certification of a plaintiff class under FED. R. CIV. P. 23(b)(1) is appropriate in that inconsistent or varying adjudications with respect to individual members of the Class would establish incompatible standards of conduct for Defendants or adjudications with respect to individual members of the Class as a practical matter would be dispositive of the interests of the other members not parties to the adjudications or would substantially impair or impede their ability to protect their interests.

## COUNT I

### (Violation of the Wiretap Act)

28. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

29. As described herein, Facebook intentionally intercepted and collected wire or electronic communications from its users.

30. At times, Facebook intercepted and collected information from its users without their consent while the users were not logged-in to Facebook.

31. The transmission of data between Plaintiff's computer and the Internet constitute

"electronic communication" within the meaning of 18 U.S.C. § 2510(12).

32.    Facebook's data collection practices as described herein constitute "interceptions" within the meaning of § 2510(4).

33.    As a direct and proximate result of such unlawful conduct, Defendants violated 18 U.S.C. § 2511 in that Defendants:

    a.    Intentionally intercepted, endeavored to intercept, or procured another person to intercept wire and/or electronic communications of Plaintiff;

    b.    Upon belief predicated upon further discovery, intentionally disclosed or endeavored to disclose to another person the contents of Plaintiff's wire or electronic communications, knowing or having reason to know that the information was obtained through the interception of wire or electronic communications in violation of 18 U.S.C. §2511(1)(a); and

    c.    Upon belief predicated upon further discovery, intentionally used or endeavored to use the contents of Plaintiff's wire or electronic communications, knowing or having reason to know that the information through the interception of wire or electronic communications in violation of 18 U.S.C. §2511(1)(a).

34.    Facebook's actions described herein occurred without the consent of Plaintiff and violated Facebook, Inc's own Privacy Policy per the following promises it made to users:

    a.    "We receive data whenever you visit a....website that uses Facebook Platform or visit a site with a Facebook feature....This may include the date and time you visit the site; the web address, or URL, you're on; technical information about the IP address, browser and the operating

system you use; and, if you are logged in to Facebook, your User ID."
*Facebook Data Use Policy*, available at
http://www.facebook.com/full_data_use_policy as of October 11, 2011
and last updated September 23, 2011.

b. "Does Facebook use cookies if I don't have an account or have logged out
of my account? When you log out of Facebook, we remove the cookies
that identify your particular account, but we do use other cookies primarily
to help keep you and others on Facebook safe and secure. For example, we
use cookies to identify and disable the accounts of spammers and phishers,
to prevent people who are underage from signing up with a false birth
date, to help you recover your account if you lose access to it or it's
compromised, to power our opt-in security features like Login
Notifications and Login Approvals, and to help identify public computers
so that we can discourage people from using "Keep me logged in." We
may also use anonymized or aggregate information to improve our
products. We also use cookies if you don't have a Facebook account, but
have visited facebook.com. Again, these cookies help us protect Facebook
and the people who use it from malicious activity. For example, they help
us detect and prevent denial-of-service attacks and the mass creation of
fake accounts. We do not use these cookies to create a profile of your
browsing behavior on third-party sites. *Facebook Frequently Asked
Questions*, available at permalink:
https://www.facebook.com/help/?faq=239530772765713#Does-

Facebook-use-cookies-if-I-don't-have-an-account-or-have-logged-out-of-my-account? on October 11, 2011; and

c.    "What information does Facebook receive when I visit a site with the Like button or another social plugin?..... If you're logged out or don't have a Facebook account and visit a website with the Like button or another social plugin, your browser sends us a more limited set of information. For example, because you're not logged in to Facebook, we don't receive your user ID." *Facebook Frequently Asked Questions*, available at permalink: https://www.facebook.com/help/?faq=293506123997323#What-information-does-Facebook-receive-when-I-visit-a-site-with-the-Like-button-or-another-social-plugin? on October 11, 2011.

35.    Facebook's actions described herein occurred without the consent of Facebook-affiliated websites, including, for example, the websites for the New York Times and Washington Post newspapers, in that:

a.    The interception and collection of information described in this paragraph caused the New York Times to violate its own Privacy Policy for its websites, including www.nytimes.com, which informs readers:

1.    "If you have registered online for one of our sites, The New York Times will not sell, rent, swap or authorize any third party to use your e-mail address without your permission. This also applies to any information that personally identifies you, except as noted immediately below;" and

2.    "NYTimes.com will not share personal information about you as an individual to third parties without your consent."

b. The interception and collection of information described in this paragraph caused the Washington Post to violate its own Privacy Policy for its websites, including www.washingtonpost.com, which informs readers:

**Do other companies or people have access to personally identifiable information I provide to washingtonpost.com?**

When you are on an area of washingtonpost.com and are asked for personally identifiable information, you are providing that information to The Washington Post Company, its divisions or affiliates, or vendors providing contractual services for washingtonpost.com (such as hosting vendors and list managers). If personally identifiable information is being provided to and/or maintained by any company other than these, our policy is that we will not transfer that personally identifiable information unless notice is given prior to transfer. If you do not want your information to be shared, you can choose not to allow the transfer by not using that particular service or by expressing this preference, if requested.

36. Regardless of the consent from Plaintiff or the Facebook-affiliated websites, as may be alleged by Facebook, such consent was not valid because Facebook's actions described herein were for the purpose of committing tortious acts in violation of the laws of the United States or of Mississippi. In taking its actions, Facebook committed the following tortious acts alleged in this petition:

a. Unjust enrichment;

b. Trespass to personal property;

c. Tortious interference with a business expectancy;

       d.   Breach of contract; and

       e.   Invasion of privacy.

37.    As a result of the above violations and pursuant to 18 U.S.C. § 2520, Defendants are

liable to Plaintiff and the Class in the sum of statutory damages consisting of the greater

of $100 for each day each of the class members' data was wrongfully obtained or

$10,000.00 per violation; injunctive and declaratory relief; punitive damages in an

amount to be determined by a jury, but sufficient to prevent the same or similar conduct

by Facebook in the future, and a reasonable attorney's fee and other litigation costs

reasonable.

## COUNT II

### (Unjust enrichment)

38.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

39.    Plaintiff conferred a benefit on Defendants without Plaintiff's consent, namely access to

her wire or electronic communications over the Internet.

40.    Upon information and belief, Defendants realized such benefits through either sales to

third-parties or greater knowledge of its own users' behavior without their consent.

41.    Acceptance and retention of such benefit without Plaintiff's consent is unjust and

inequitable.

## COUNT III

### (Trespass to Personal Property)

42.    Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

43.    Defendants, intentionally and without consent or other legal justification, tracked

Plaintiff's activity while Plaintiff was logged-off of the website Facebook.com, and, in

the process, connected Plaintiff's personally identifiable information to her specific actions on the Internet.

44. Defendants, intentionally and without consent or other legal justification, placed cookies on Plaintiff's computers which tracked her activity while logged-off of Facebook.

45. Defendants' intentional and unjustified placing of a cookie designed to track Plaintiff's Internet activities while logged-off of Facebook and actual tracking of Plaintiff's activities interfered with Plaintiff's use of the following personal property owned by Plaintiff:

      a. Plaintiff's computer; and

      b. Plaintiff's personally identifiable information.

## <u>COUNT IV</u>

### (Tortious interference with a business expectancy)

46. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

47. Plaintiff had a valid business expectancy with Facebook-affiliated websites such as newyorktimes.com and washingtonpost.com that the affiliated websites would not share their personal identifiable information with third-parties without their express consent

      a. The Facebook-affiliate New York Times maintained a Privacy Policy for its websites, including www.newyorktimes.com during the period in which Defendants committed the acts alleged herein which contained the following promises to Plaintiff:

            i. "If you have registered online for one of our sites, The New York Times will not sell, rent, swap or authorize any third paity to use your e-mail

address without your permission. This also applies to any information that personally identifies you, except as noted immediately below."

    ii.  "NYTimes.com will not share personal information about you as an individual to third parties without your consent."

b.    The Facebook-affiliate Washington Post maintained a Privacy Policy for its websites, including www.washingtonpost.com during the period in which Defendants committed the acts alleged herein which contained the following promise to Plaintiff:

> Do other companies or people have access to personally identifiable information I provide to washingtonpost.com?
>
> When you are on an area ofwashingtonpost.com and are asked for personally identifiable information, you are providing that information to The Washington Post Company, its divisions or affiliates, or vendors providing contractual services for washingtonpost.com (such as hosting vendors and list managers). If personally identifiable information is being provided to and/or maintained by any company other than these, our policy is that we will not transfer that personally identifiable information unless notice is given prior to transfer. If you do not want your information to be shared, you can choose not to allow the transfer by not using that particular service or by expressing this preference, if requested. Additional information about personally identifiable information follows.

48.    Defendants knew or should of known of the business relationship and expectancy between Plaintiff and Facebook-affiliated sites through the affiliated-sites' publicly available Privacy Policies.

49.    Defendants intentionally caused breach of the business relationship and expectancy between Plaintiff and Facebook-affiliated sites by placing 'cookies' on Plaintiff's computer which would allow Facebook to circumvent both its own and its affiliates' publicly-stated Privacy Policies.

50.    Defendants' actions in interfering with the business relationships and expectations between Plaintiff and Facebook-affiliated were not justified.

51.     Plaintiff suffered damage as a result of the Defendants' conduct.

## COUNT V

### (Breach of Contract)

52.     Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

53.     In exchange for allowing users to sign up for an account on its website, www.facebook.com,
Defendant Facebook requires its users to agree to a form contract, which includes its Terms of
Use and Privacy Policy.

54.     The Privacy Policy provides that Facebook does not track personal account information from its
users without their consent while the users are not logged-in to Facebook.

55.     Defendant Facebook tracked, collected and stored its users' wire or electronic
communications, including but not limited to portions of their Internet browsing history, even
when the users were not logged-in to Facebook.

56.     In so doing, Facebook breached its contract with Plaintiff and the Class.

57.     As a result of the breach of contract, Plaintiff and the Class suffered a substantial and
ascertainable loss of money, property and/or other damages.

## COUNT VI

### (Invasion of Privacy)

58.     Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

59.     Mississippi law recognizes a claim for invasion of privacy based on the intentional intrusion upon
the solitude or seclusion of another.

60.     Based on the allegations stated herein, Defendant's actions were highly offensive to the
ordinary, reasonable person, as the result of conduct to which a reasonable person would
strongly object.

61.     Defendants acted in bad faith or acted with utter recklessness.

62.    As a result of Defendants' invasion of privacy, Plaintiff and the Class suffered damages.

## PRAYER FOR DAMAGES

**WHEREFORE,** Plaintiff, on behalf of herself and all members of the Class respectfully prays for judgment against Defendants as follows:

   a. For an order certifying that this action may be maintained as a class action under FED. R. CIV. P. 23(b)(3) or, in the alternative, FED. R. CIV. P. 23(b)(1) and appointing Plaintiff and her counsel, to represent the Class and directing that reasonable notice of this action be given to all other members of the Class as necessary and appropriate;

   b. For a declaration that Defendants, through their actions and misconduct as alleged above, have been unjustly enriched and an order that Defendants disgorge such unlawful gains and proceeds;

   c. For a declaration that the Defendants, through their actions and misconduct as alleged above, have committed trespass upon the personal property of Plaintiff and an order assessing damages against Defendants for violations of Plaintiff's personal property rights;

   d. For a declaration that Defendants tortiously interfered with a business expectancy of Plaintiff and Facebook-affiliated websites and an order assessing damages against Defendants to compensate Plaintiff for harms caused by Defendants' actions;

   e. That judgment be entered against Defendants for statutory damages pursuant to 18 U.S.C. §2520(c)(2)(B);

   f. That judgment be entered against Defendants for statutory damages pursuant to

18 U.S.C. §2520(b)(2);

g. That Plaintiff and the Class recover pre-judgment and post-judgment interest as permitted by law;

h. For an award to Plaintiff and the Class of their reasonable attorneys' fees and other litigation costs reasonably incurred pursuant to 18 U.S.C. §2520(b)(3), or equity;

i. That the court enter an order granting Plaintiff and the Class a preliminary and permanent injunction restraining and enjoining Defendants from any act to intercept electronic information from its users when they are not logged in and from disclosing any of the information already acquired on its servers; and

j. That the Court grant such other and further relief as may be just and proper.

### JURY DEMAND

Plaintiff demands that all issues so triable in this Complaint be tried to a jury.

Dated: October 12, 2011.

Respectfully submitted,

BROOKE RUTLEDGE,
Individually and on Behalf of All
Others Similarly Situated,

/s/ David W. Shelton
David Shelton (MSB No. 99675)
1223 Jackson Avenue East, Ste. 202
P.O. Box 2541
Oxford, Mississippi 38655
Telephone: (662) 281-1212
Facsimile: (662) 281-1312
E-mail: david@davidsheltonpllc.com

Counsel for Plaintiff